IN THE COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT
IN AND FOR LEE COUNTY, FLORIDA
CIVIL DIVISION

**Janai Hernandez,**

    *Plaintiff*,

v.

**AFNI, Inc.,**
**Credence Resource Management, LLC,** *and*
**Experian Information Solutions, Inc.**

    *Defendants*.

Case No: _____

**JURY TRIAL DEMANDED**

## AMENDED COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Janai Hernandez** ("**Ms. Hernandez**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **AFNI, Inc.** ("**AFNI**"), **Credence Resource Management, LLC** ("**Credence**"), and **Experian Information Solutions, Inc.** ("**Experian**") (jointly, the "**Defendants**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action for damages more than $8,000 but not to exceed $30,000, brought by Ms. Hernandez against the Defendants for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**") and the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

### JURISDICTION AND VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCRA, 15 U.S.C. § 1681p, and section 34.01, Florida Statutes.

3. The Defendants are subject to the jurisdiction of this Court pursuant to section 48.193(1)(a)(1), Florida Statutes.

Page **1** of **18**

4. Venue is proper in Lee County because the acts complained of were committed and/or caused by Defendants within Lee County.

## PARTIES

2. **Ms. Hernandez** is a natural person residing in the City of Lehigh Acres, Lee County, Florida, and a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3) and the FC.

3. **AFNI** is an Illinois corporation with a primary business address of **1310 Martin Luther King Dr., Bloomington, IL 61701.**

4. AFNI is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System**, **1200 South Pine Island Road, Plantation, FL 33324.**

5. **Credence** is a Nebraska limited liability company with a primary business address of **4222 Trinity Mills, Suite 260, Dallas, TX 75287.**

6. Credence is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.**

7. AFNI and Credence are *Debt Collectors* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), in that they use an instrumentality of interstate commerce, including postal mail and the internet, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

8. AFNI and Credence are licensed as *Consumer Collection Agencies* ("**CCAs**") by the Florida Office of Financial Regulation.

9. As a licensed CCAs, AFNI and Credence know, or should know, the requirements of the FDCPA and FCRA.

10. **Experian** is an Ohio corporation, with a primary business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

11. Experian is registered to conduct business as a foreign corporation in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 32301.

12. Experian is a nationwide **Consumer Reporting Agency** ("**CRA**") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

13. Sometime prior to 2018, Ms. Hernandez opened an account with DirecTV, which is owned by AT&T ("**AT&T**"), for personal satellite television.

14. Around May 2019, Ms. Armstrong allegedly became delinquent on the account (the "**Debt**" or "**alleged Debt**").

15. The alleged Debt arose from services which were primarily for family, personal, or household purposes, *specifically* satellite television for personal and household use, and therefore meets the definition of *Debt* under the FDCPA, 15 U.S.C. §1692a(5).

16. Sometime prior to May 2020, AT&T placed the Debt for collection with AFNI.

17. In July 2020, AFNI began reporting the Debt, monthly, to Experian. **SEE PLAINTIFF'S EXHIBIT A.**

18. AFNI reported to Experian that Ms. Hernandez owed $899 and that the original creditor was "AT T." *Id.*

**Duplicate Tradelines**

19. On information and belief, in November 2020, AT&T recalled the Debt from AFNI and re-assigned the Debt for collection to Credence.

20. Alternatively, AT&T did not recall the Debt from AFNI and instead assigned the debt for collection to two different debt collectors, concurrently, due to systemic errors.

21. In or around January 2021, Credence began reporting the Debt monthly to Experian. **SEE PLAINTIFF'S EXHIBIT B.**

22. Credence reported the same balance as AFNI; however, Credence reported that the original creditor was "DIRECTV LLC." *Id.*

23. AFNI, despite no longer being assigned the Debt for collection, continued to report the Debt, monthly, to Experian -- *simultaneous* to Credence's reporting.

24. As a result, the same debt appeared as two separate, distinct tradelines in reports produced by Experian concerning Ms. Hernandez.

25. Anyone viewing Ms. Hernandez's credit report would falsely conclude she owed two different debts to two different creditors totaling $1,798, instead of a singular debt of $899.

26. The two tradelines shared the same balance, status and comment.

27. AT&T frequently assigns the identical debt, simultaneously, to different debt collection agencies.

28. As a result of this, it is not uncommon for duplicate tradelines to be reported to Experian concerning the same debt.

29. Experian has received a large number of consumer disputes concerning duplicate reporting of AT&T debts.

30. Despite this, on information and belief, Experian's automated systems do not flag accounts as duplicate when reported from different furnishers, even when the underlying account information is nearly identical.

31. The Defendants' duplicate tradelines caused significant harm to Ms. Hernandez's credit scores, as the *number* of charged-off or collection accounts on a consumer's report severely, and adversely, affects the consumer's scores.

### Credence Reports False Data to Experian

32. Credence indicated in its reports to Experian that the account was "First Reported" as of January ▇▇ **SEE PLAINTIFF'S EXHIBIT B.**

33. Credence also indicated in its reports to Experian that the alleged Debt had a Date of First Delinquency ("**DOFD**") of May 2019. *Id.*

34. AFNI previously reported the same alleged debt with a DOFD of November 2018.

35. Thus, on information and belief, Credence re-aged the Debt upon being assigned the Debt for collection, making the Debt appear as more recent than was actually the case.

36. Credence's re-aging of the Debt caused significant harm to Ms. Hernandez's credit scores, as the recency of a delinquency heavily impacts a consumer's scores, with the more recent an account having a greater negative impact.

37. Likewise, the "First Reported" date is false, as the account was reported as early as July ▇▇ – by AFNI.

38. On information and belief, the "Frist Reported" date is automatically generated by Experian, upon receipt of data from a furnisher, such as Credence.

39. As a result, Experian indicated in reports sold regarding Ms. Hernandez, and in its consumer disclosures to Ms. Hernandez, that the Credence tradeline was both delinquency and

first reported more recently than was actually the case, thereby causing significant harm to Ms. Hernandez's credit reports and scores.

40. The duplicate assignment of debt was not unique to Ms. Hernandez nor an isolated incident. In the past, AT&T has placed a great number of consumer debts simultaneously with more than one debt collector. Such duplicate-placement issues are not limited only to AFNI and Credence, and has affected placements with other debt collection agencies whom AT&T utilizes the services of, including Credit Management, Inc., CBE Group, IC Systems, and Enhanced Recovery Company.

41. On information and belief, neither AFNI nor Credence have any procedures in place which even attempt to prevent duplicate placements. For example, Credence does not ask its clients to certify that accounts being placed with it for collection are not also placed for collection with other agencies concurrently.

42. Credence often performs "soft" or "account review" credit inquiries on consumers it is engaged in collection activity with. Such reports would show that, often, the same AT&T debt is being actively reported by different debt collection agencies.

## Ms. Armstrong's Disputes of the Debt

43. On April 28, 2021, Ms. Hernandez requested and obtained a copy of her consumer credit disclosure from Experian.

44. Ms. Hernandez discovered that AFNI and Credence were reporting the identical Debt.

45. Ms. Hernandez disputed both the AFNI and the Credence tradeline to Experian, stating that the tradelines were reporting the same underlying Debt.

46. Experian, upon receipt of Ms. Hernandez's disputes, sent both AFNI and Credence an *Automated Consumer Dispute Verification* Request ("**ACDV**") form through an online platform known as e-OSCAR, asking both AFNI and Credence to make reasonable investigations into the disputes.

47. AFNI responded to the ACDV, stating that the accuracy of the reported information ***could not be*** verified and thus requested that Experian delete its tradeline.

48. Credence responded to the ACDV, stating that the accuracy of the reported information ***could be*** verified and continued to report the its tradeline, although it indicated its reported information required updates.

49. Credence updated its reporting to claim the original creditor was no longer "DIRECTV LLC," but was now "DTV ENABLER." **SEE PLAINTIFF'S EXHIBIT C.**

50. As is plainly obvious, "DTV ENABLER" is not the original creditor of the Debt.

51. No entity called "DTV ENABLER" exists, nor is there any consumer creditor with a name reasonably close to this.

52. No consumer would recognize a debt where the original creditor is identified as "DTV ENABLER" since AT&T is the original creditor.

53. Any consumer would be confused by Credence's false reporting of the original creditor and would be placed at a significant, and material, disadvantage when attempting to chart a course of action to take concerning the Debt.

54. The false identification of the original creditor of an account materially disadvantages an unsophisticated consumer and is itself sufficient to violate the FDCPA. *See, e.g., Tourgeman v. Collins Fin. Servs., Inc.* 755 F.3d 1109 (9th Cir. 2014) ("We conclude that the misidentification of the original creditor is independently sufficient to constitute a violation of the

Act. We are persuaded that, in the context of debt collection, the identity of a consumer's original creditor is a critical piece of information.")

55. Beyond this, the *Credit Reporting Resource Guide*, published by the Consumer Data Industry Association, a trade association that represents the CRAs, states: "**The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent." (**Emphasis original**). SEE PLAINTIFF'S EXHIBIT D.

56. The *Credit Reporting Resource Guide* instructs debt collectors like Credence to "(r)eport the name of the company/creditor that originally opened the account for the consumer." *Id.*

57. Credence's report of the Debt Experian a *Communication* as defined by 15 U.S.C. § 1692a(2) and were done in connection with collection of the debt.

58. Experian has sold at least 10 consumer reports regarding Ms. Hernandez which included both the AFNI and Credence tradelines and which included the false DOFD and date "First Reported."

59. As a result of the Defendants' actions, Ms. Hernandez has suffered damages, including lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to her reputation.

60. Ms. Hernandez has hired this law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## VIOLATIONS OF THE FDCPA – *AFNI*

61. Ms. Armstrong adopts and incorporates paragraphs 1 – 60 as if fully stated herein.

62. AFNI violated **15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(8), and 1692e(10)** when AFNI made false and/or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian after AT&T recalled the Debt from AFNI, claiming AFNI was the authorized collection agent concerning the Debt, when it no longer was, thus causing the collection tradeline to appear twice on Ms. Hernandez's credit report.

63. AFNI's actions caused Ms. Hernandez to suffer damages to her credit report and scores, as well as emotional distress in having dispute the account.

**WHEREFORE,** Ms. Hernandez respectfully requests this Honorable Court enter judgment against AFNI and for her as follows:

   a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

   b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

   c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

   d. Such other relief that this Court deems just and proper.

### COUNT II
### VIOLATIONS OF THE FDCPA – *Credence*

64. Ms. Hernandez adopts and incorporates paragraphs 1 – 60 as if fully stated herein.

65. Credence violated **15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(8), and 1692e(10)** when Credence made false and/or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian, claiming: (a) the DOFD of the Debt was May 2019, thus making the Debt appear more recent than was actually the case; (b) the account had been "First reported" as of January ▮▮▮▮ when it had been reported since July 2020 or earlier; and, (c) falsely reporting the name of the original creditor, claiming that "DTV ENABLER" was the "original creditor" of the Debt, when the original creditor was AT&T.

66. Credence also violated these subsections by reporting a debt which was a duplicate of a debt reported simultaneously by another debt collector, AFNI. Credence had no procedures in place – much less reasonable ones – to prevent this action from occurring.

67. Credence's actions caused Ms. Hernandez to suffer damages to her credit report and scores, as well as emotional distress in having to dispute errant information on her credit report.

**WHEREFORE,** Ms. Hernandez respectfully requests this Honorable Court enter judgment against Credence and for her as follows:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT III
## VIOLATIONS OF 15 U.S.C. § 1681e(b) – *Experian*

68. Ms. Hernandez adopts and incorporates paragraphs 1 – 60 as if fully stated herein.

69. Experian violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Hernandez when Experian sold at least 10 reports containing both the AFNI and Credence tradelines, when both tradelines represented the same underlying account. Experian further reported, falsely, that the Credence tradeline was "First Reported" in January 2021.

70. Experian's errant reporting was the result of automated systems which do not flag obviously-duplicate accounts when reported to it by different furnishers of data.

71. Likewise, Experian's reporting of false "First Reported" dates is the result of Experian's automated systems which auto-generate this information based on the date information is furnished to Experian.

72. Experian has been sued on numerous occasions for reporting duplicate tradelines and is aware that its systems do not flag such information.

73. Experian's conduct was therefore willful, or done with a reckless disregard for Ms. Hernandez's rights under the FCRA, and Ms. Hernandez is entitled to the greater of her actual damages or statutory damages per violation pursuant to 15 U.S.C. § 1681n.

74. Alternatively, Experian's conduct was the result of negligence, and Ms. Hernandez is entitled to actual damages pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Hernandez respectfully requests this Honorable Court enter judgment against Experian for:

a. The greater of statutory damages of $1,000 per incident (for a total of $10,000, based solely upon information known at the time of filing), pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1) or Mr. Hernandez's actual damages for loss of credit opportunities and related economic and non-economic injuries;

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

c. Such other relief that this Court deems just and proper.

## COUNT IV
## VIOLATIONS OF 15 U.S.C. § 1681g(a)(1) – *Experian*

75. Ms. Hernandez adopts and incorporates paragraphs 1 – 60 as if fully stated herein.

76. Experian violated **15 U.S.C. § 1681g(a)(1)** when responding to Ms. Hernandez's request for her consumer disclosure, by failing to clearly and accurately disclose to Ms. Hernandez, a Consumer, all of the information in her file at the time of the request. Specifically, Experian disclosed a false date "First Reported" of the Credence tradeline.

77. Experian's disclosure of a false "First Reported" dates is the result of Experian's automated systems which auto-generate this information based on the date information is furnished to Experian.

78. Experian's conduct was therefore willful, or done with a reckless disregard for Ms. Hernandez's rights under the FCRA, and Ms. Hernandez is entitled to the greater of her actual damages or statutory damages per violation pursuant to 15 U.S.C. § 1681n.

79. Alternatively, Experian's conduct was the result of negligence, and Ms. Hernandez is entitled to actual damages pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Hernandez respectfully requests this Honorable Court enter judgment against Experian for:

a. The greater of statutory damages of $1,000 per incident, pursuant to 15 U.S.C. § 1681n(a)(1)(A) or 15 U.S.C. § 1681o(a)(1) or Mr. Hernandez's actual damages for loss of credit opportunities and related economic and non-economic injuries;

b. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3); and,

c. Such other relief that this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on **December 27, 2021,** by:

**SERAPH LEGAL, P.A.**

*/s/ Bridget L. Scarangella*
Bridget L. Scarangella, Esq.
Florida Bar No.: 1022866
BScarangella@seraphlegal.com
*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
BGeiger@SeraphLegal.Com
*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

| | |
|---|---|
| A | Plaintiff's Experian Consumer Disclosure, April 28, 2021 – The AFNI Tradeline, Excerpt |
| B | Plaintiff's Experian Consumer Disclosure, April 28, 2021 – The Credence Tradeline, Excerpt |
| C | Plaintiff's Experian Consumer Disclosure, August 14, 2021 – The Credence Tradeline, Excerpt |
| D | *Credit Reporting Resource Guide*, Original Creditor Name, Excerpt |

# EXHIBIT A
## Plaintiff's Experian Consumer Disclosure, April 28, 2021 – The AFNI Tradeline, Excerpt



# EXHIBIT B
## Plaintiff's Experian Consumer Disclosure, April 28, 2021 – The Credence Tradeline, Excerpt

**Account name**
CREDENCE RESOURCE MANAGE

17000 DALLAS PKWY STE 204
DALLAS, TX 75248
855 880 4791
**Address identification number**
0567058737

**Original creditor**
DIRECTV LLC

**Account number**
[redacted]

**Type**
Collection
**Terms**
1 Months

**On record until**
Feb 2026

**Recent balance**
$899 as of 04/24/2021

**Credit limit or original amount**
$899
**High balance**
$0
**Monthly payment**
$0
**Recent payment amount**
$0

**Date opened**
11/2020

**Date of status**
11/2020
**First reported**
01/2021
**Responsibility**
Individual

**Status**
Collection account.
$899 past due as of Apr 2021.

**Account history**

2021
Apr  Mar  Feb  Jan
C    C    C    C

Collection as of Apr 2021, Apr 2021, Apr 2021, Apr 2021, Mar 2021, Mar 2021, Mar 2021, Mar 2021, Feb 2021, Feb 2021, Feb 2021, Jan 2021, Jan 2021, Jan 2021, Jan 2021

**Balance history**

The following data will appear in the following format:
Date: account balance / date payment received / scheduled payment amount / actual amount paid
Mar 2021: $899 / No data / No data / No data
Feb 2021: $899 / No data / No data / No data
Jan 2021: $899 / No data / No data / No data
Jan 2021: $899 / No data / No data / No data
The original amount of this account was $899

# EXHIBIT C
## Plaintiff's Experian Consumer Disclosure, August 14, 2021 – The Credence Tradeline, Excerpt

8/14/2021

Annual Credit Report - Experian

Prepared For
**JANAI HERNANDEZ**
**Personal & Confidential**

Date Generated  Aug 14, 2021
Report Number

**CREDENCE RESOURCE MANAGE**
**Potentially Negative**

### Account Info

| | |
|---|---|
| Account Name | CREDENCE RESOURCE MANAGE |
| Account Number | |
| Account Type | Collection |
| Responsibility | Individual |
| Date Opened | 11/19/2020 |
| Status | Collection account. $899 past due as of Aug 2021. |
| Status Updated | Nov 2020 |
| Balance | $899 |
| Balance Updated | 08/07/2021 |
| Recent Payment | $0 |
| Monthly Payment | $0 |
| Original Balance | $899 |
| Highest Balance | $0 |
| Terms | 1 Months |
| On Record Until | Feb 2026 |

### Payment History

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2021 | C | C | C | C | C | C | C | C | — | — | — | — |

C  Collection

**Payment history guide**

Collection as of Aug 2021, Jul 2021, Jul 2021, Jul 2021, Jul 2021, Jul ▇ Jun ▇ Jun 2021, Jan 2021 to May 2021

Page **16** of **18**

# EXHIBIT C
## Plaintiff's Experian Consumer Disclosure, August 14, 2021 – The Credence Tradeline, Excerpt

**Balance Histories**

| Date | Balance | Scheduled Payment | Paid |
|---|---|---|---|
| Jul 2021 | $899 | $0 | $0 |
| Jun 2021 | $899 | $0 | $0 |
| May 2021 | $899 | $0 | $0 |
| Apr 2021 | $899 | $0 | $0 |
| Mar 2021 | $899 | $0 | $0 |
| Feb 2021 | $899 | $0 | $0 |
| Jan 2021 | $899 | $0 | $0 |

https://usa.experian.com/acr/printReport?type=CDI

---

8/14/2021      Annual Credit Report - Experian

| Date | Balance | Scheduled Payment | Paid |
|---|---|---|---|
| Jan 2021 | $899 | $0 | $0 |

**Additional info**

The original amount of this account was $899

**Historical Info**

Original Creditor      DTV ENABLER

**Contact Info**

Address      4222 TRINITY MILLS RD STE 260, DALLAS TX 75287

Phone Number      (855) 880-4791

**Comment**

Current:

Account previously in dispute – investigation complete, reported by data furnisher

Previous:

Account previously in dispute – investigation complete, reported by data furnisher

Jun 2021 to Jul 2021

**Reinvestigation Info**

This item was updated from our processing of your dispute in Jun 2021.

# EXHIBIT D
*Credit Reporting Resource Guide*, Original Creditor Name Excerpt

## Field Definitions

### K1 Segment
### Original Creditor Name

The K1 Segment must be present each time the account is reported by collection agencies, debt buyers, check guarantee companies, student loan guaranty agencies, and the U.S. Department of Education. **The purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports.** Without the original creditor names, consumers may not know what the accounts represent.

Some state laws and CDIA policy stipulate that the original client/creditor must be identified. Federal law stipulates that the name of the payee must be identified when reporting returned checks.

Only one occurrence of the K1 Segment can be appended to the Base Segment. If not applicable, do not report the K1 Segment.

| FIELD | FIELD NAME & DESCRIPTION | 366 and 426 FORMATS | | |
|---|---|---|---|---|
| | | Length | Position | Recording Technique |
| 1 | **Segment Identifier**<br>Contains a constant of **K1**. | 2 | 1-2 | AN |
| 2 | **Original Creditor Name**<br>The content of this field is dependent on the type of reporter.<br><br>Collection Agencies: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been turned over to multiple collection agencies.<br><br>Debt Buyers: Report the name of the company/creditor that originally opened the account for the consumer, even if the account had been sold multiple times to different debt buyers. Refer to the K2 Segment for "purchased from" information.<br><br>Companies Reporting Returned Checks: Report the name of the payee; i.e., name of company to which the check was written. Refer to Frequently Asked Question 16 for additional guidelines on reporting returned checks.<br><br>Student Loan Guarantors/U.S. Department of Education: Report the name of the original student loan lender.<br><br>One of the following three options should be used when reporting a creditor's name that would reveal sensitive information about the consumer.<br><br>1. Report the name of the institution, but do not include reference to the type of service. For example, use the hospital name without identifying that it was the psychiatric unit that provided care. If a hospital's name reveals sensitive information, abbreviate the name.<br><br>2. Use the corporate name if it is different from the commercial name of a mental institution or drug rehabilitation center.<br><br>3. Do not report the account if either of the above two options would not sufficiently protect the consumer's privacy.<br><br>**Note: Encoded information is not acceptable in this field.** | 30 | 3-32 | AN |